386 A.2d 551

**COMMONWEALTH of Pennsylvania**

v.

**Jeffrey Charles HARMES, Appellant.**

Superior Court of Pennsylvania.

Submitted June 22, 1976.

Decided April 13, 1978.

George E. Goldstein, Philadelphia, for appellant.

John A. Kenneff, Assistant District Attorney, and D. Richard Eckman, District Attorney, Lancaster, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

Appellant was convicted of possession of marijuana with intent to deliver. 35 P.S. § 780–113(a)(30). He raises five assignments of error.

—1—

Appellant argues that there was not sufficient evidence to support a finding of intent to deliver, in that there was no testimony as to the amount of marijuana found in his possession. The trial transcript reveals that seven plastic bags of marijuana were introduced into evidence, but there is no description of their size or weight. However, appellant's motion to suppress averred that the evidence seized from appellant was "seven pounds of marijuana."

█ Appellant also argues that quantity of marijuana alone is not sufficient to prove intent to deliver. We held otherwise in *Commonwealth v. Cubler*, 236 Pa.Super. 614, 346 A.2d 814 (1975). The seven pounds possessed by appellant was 3200 grams—over one hundred times the 30 grams specified by statute to be considered a "small amount for personal use." 35 P.S. § 780–113(a)(31). *Cf. Commonwealth v. Wright*, 234 Pa.Super. 83, 339 A.2d 103 (1975) (Dissenting Opinion by Hoffman, J.) (twenty-five bags of heroin—a heavy user's one-day supply—not sufficient to support inference of intent to deliver). Cases under the federal statute similar to our statute, 21 U.S.C.A. § 841(a), allow the inference of intent to deliver to be drawn from a quantity that is more likely than not to be consistent with trafficking in drugs than with personal use. *See, e.g., United States v. Mather*, 465 F.2d 1035 (5th Cir. 1972). Here, we hold that the lower court as fact finder could permissibly infer intent to deliver from appellant's possession of 112 ounces of marijuana.

—2—

█ Appellant argues that his waiver of jury trial was not knowing and intelligent because the lower court did not hold an on-the-record colloquy in conformance with Pa.R.

Crim.P. 1101. However, in *Commonwealth v. Williams*, 454 Pa. 368, 312 A.2d 597 (1973), the Supreme Court declined to make a *per se* prophylactic rule reversing convictions for failure to comply with Rule 1101, and held instead that there could be adequate substitutes for the colloquy. In *Williams* the substitute was a subsequent PCHA hearing at which the defendant testified that he knew what a jury was and that he could have a jury trial if he wanted one. On the particular facts of *Williams* the Court found the subsequent hearing inadequate because it did not indicate that the defendant knew the essential ingredients of a jury trial.

Here, after a jury had been selected, defense counsel stated that appellant wished to waive jury trial. Appellant then signed a written waiver form, which read:

AND NOW, Sept. 19, 1974, comes the defendant and pleads not guilty and with the consent of his attorney, and the attorney for the Commonwealth and the approval of the judge, waives a jury trial and elects to be tried by a judge without a jury, fully understanding that if he were tried by a jury:

1. the jury would be chosen from members of the community thereby producing a jury of his peers,

2. that any verdict rendered by a jury must be unanimous and,

3. that he would be permitted to participate in the selection of a jury panel.

From this record we can conclude, first that appellant knew he had a right to a jury trial, because a jury had already been chosen, and second that he "knew the essential ingredients of a jury trial which are necessary to understand the significance of the right he was waiving," *Commonwealth v. Williams, supra*, 454 Pa. at 373, 312 A.2d at 600, because he signed a form that set forth those ingredients. In a later case we may find that a written waiver does not conclusively prove that the waiver was knowing and intelligent; if an appellant claims that he did not understand the waiver form he signed, an evidentiary hearing may be necessary. This is so because a written form is not as

informative as a colloquy, in that it does not elicit a response from the signer. Here, however, appellant does not assert that he did not understand the form. He relies only on the lack of colloquy. Since the record on the waiver is not "silent," the burden is on appellant to establish that his waiver was not knowing and intelligent. *See Commonwealth v. Coleman*, 230 Pa.Super. 1, 326 A.2d 568 (1974). He has not carried this burden.

—3—

■ Appellant argues that his suppression motion should have been granted, on three theories.[1]

The search that produced the evidence against appellant was made pursuant to a warrant. We reproduce here the relevant portions of the supporting affidavit:

1. Two further theories—that part of the affidavit for the search warrant was invalid because not signed by the issuing authority, and that a violation of the "knock-and-announce" rule rendered the seized evidence inadmissible—were not raised in the pretrial motion to suppress and therefore were waived. *Commonwealth v. Jackson*, 464 Pa. 292, 346 A.2d 746 (1975).

154

SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSONS TO BE SEARCHED *(Street and No, Apt No, Vehicle, Safe Deposit Box, etc)*

1961 Volkswagen Sdn, Blue in color, Pa. Reg. 57H–330
Beth Recher, 805 N. Shippen St. Lanc. Pa.

NAME OF OWNER, OCCUPANT OR POSSESSOR OF SAID PREMISES TO BE SEARCHED *(If proper name is unknown, give alias and/or description):*

OWNER: Beth Recher, 805 N. Shippen St. Lanc. Pa.

| VIOLATION OF *(Describe conduct or specify statute)* | DATE OF VIOLATION |
| --- | --- |
| Transportation and possession of narcotices and/or dangerous drugs, including marijuana. Controlled Substance, Drug, Device and Cosmetic Act of Penna. | 23 June 74 |

PROBABLE CAUSE BELIEF IS BASED ON THE FOLLOWING FACTS AND CIRCUMSTANCES *(See special instructions below)*

1744hrs. Sunday, 23June74; Det. James Benedict received information from a confidential informant, who has related information in the past in regard to drug cases This informant related to Det. Benedict that a person by the name of Jeffrey Harmes, white male, approx. 25 yrs. was coming in on a airplane to the Phila. Pa. airport and he was carrying 15 pounds of marijuana. He was to be met at the airport by a girl by the name of Beth Recher, white female, 805 N. Shippen St. Lanc. Pa. This girl was driving a VW Sdn. blue in color with a cracked windshield. The two persons, HARMES & RECHER, were then to drive back to Lanc. Pa. and take the marijuana to 805 N. Shippen St. Lanc. Pa. The airplane was to get in to the airport at 5:30PM. 23June74. This informant was checked out by this officer with other detectives of the Lanc. City Police and it was learned that he has supplied other information in the past that has lead to arrests and convictions and also assisted in the arrests in other cases, all drug cases. Cases involved are, Robert L. Plummer (arrest & conviction); Richard Santiago (arrest). It is the opinion of Det's. Jan Walters, James Benedict, Joseph P. Geesey, based on their experience as narcotic investigator and police officers that this information is true and correct to the best of their recollection and knowledge. Also the informant related that the reason he knows this information is that he was present when some of the arrangements were made and then he was told by another person who was present when the final arrangements for the pickup and trip were made.

Over the past several months, Det. J. Geesey and other members of the Detective Division of the Lancaster City Police Dept. received phone call complaints from persons living in the area of 805 N. Shippen St. Lanc. Pa. in regard to unusual activity into and out of the house at 805 N. Shippen St. Lanc. Pa. and they had reason to believe that drug activity may be going on at that location.

Jeffrey Harmes is known to Det. Geesey and the Lancaster City Police as a user and dealer in drugs. He has an arrest record for involvement in the drug culture. He was arrested July 25, 1970 by the Lancaster City Police for Violation Drug, Device and Cosmetic Act and was sentenced (Pleaded Guilty) to $100 fine and costs and 6–23 months in Lanc. Co. Prison. July 27, 1973, he was arrested at 805 N. Shippen St. Lanc. Pa. by the Lanc. City Police when he was at this residence where marijuana was found.

1920hrs. 23June74; Det's Geesey & Benedict proceeded to 805 N. Shippen St. Lanc. Pa. and put this residence under surveillance Det. Benedict was watching the back entrance to the house and Det. Geesey was watching the front entrance. 1945hrs. 23June74, Det. Geesey observed a blue colored VW. Sdn. with a cracked windshield traveling west on E. New St. and make a right turn onto N. Shippen St. and park in front of approx. 803 N. Shippen St. Lanc. Pa. In this car at this time was a white male and a white female, female was driving. Det. Geesey recognized the male as Jeffrey Harmes who is known to the officer. After the car was parked the male got out of the car and he was carrying a suitcase with tags on it that looked like airline tags and sticking out of his right rear pants pocket was a paper that looked like the folder for an airline ticket.

It is the opinion of this officer that the information contained in this affidavit is true and correct to be of my recollection and knowledge which this officer believes to be true and correct, and based on my experience as a police officer and a narcotics investigator I believe this information to be true and correct that this subject, Jeffrey Harmes does have narcotics and/or dangerous drugs on his possession or in the VW. Sdn, blue in color, Pa. Reg. 57H-330

■ First, appellant argues that the warrant does not authorize the search of the suitcase in which the evidence against him was found. We disagree. The narrative recounts that appellant was seen arriving with a suitcase with airline tags on it, and that the investigating officer believed that appellant had marijuana "on his possession." A common-sense reading of this affidavit is that the issuing authority, finding probable cause for a search of appellant and

his "possession," authorized a search of the suitcase. The suitcase was "described with particularity in the warrant." *Commonwealth v. Searles*, 450 Pa. 384, 388, 302 A.2d 335, 337 (1973).

■ Second, appellant argues that the reliability of the informant described in the affidavit was not sufficiently proved by the facts narrated. We disagree. At least two of the factors set forth in *Commonwealth v. Ambers*, 225 Pa.Super. 381, 310 A.2d 347 (1973), are present here: the informant gave prior reliable information, and the defendant's reputation supported the informant's tip.

■ Third, appellant argues that the first prong of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1974), was not met here, in that the "facts sufficient to enable the issuing authority to [judge] that the informant had knowledge of sufficient facts to conclude that the suspect was engaged in criminal activity," *Commonwealth v. Kline*, 234 Pa.Super. 12, 16, 335 A.2d 361, 363 (1975), were based in part on facts gained from another, unidentified informant whose reliability was in no way shown. Appellant cites *Commonwealth v. Garvin*, 448 Pa. 258, 293 A.2d 33 (1972):

> The requirement of a determination of the trustworthiness of the source of the information cannot be met solely because it is channeled through an informant known to be reliable. While it may properly be assumed that the informant passed upon the reliability of the third person supplying the information to him, the law makes it most clear that it is not his judgment to make.

*Id.*, 448 Pa. at 263–4, 293 A.2d at 36.

However, in *Garvin* the reliable informant acted only as a conduit for *all* the information on which the affiant relied for the arrest of Garvin.[2] Here the reliable informant told the affiant that "he was present when some of the arrangements were made," and that it was only the "final arrange-

2. It is axiomatic that the standard for testing probable cause is the same for arrests as for searches. *Commonwealth v. Milliken*, 450 Pa. 310, 300 A.2d 78 (1973).

ments for the pickup and trip" that came from the second, untested informant. Furthermore, the details recounted by the reliable informant were verified by the affiant's own surveillance. *See Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). There was no violation of appellant's Fourth Amendment rights.

—4—

 By stipulation of defense counsel, the testimony from the suppression hearing was incorporated into the trial testimony. Appellant contends that this procedure denied him due process of law and his right to confront witnesses. This argument has no merit: appellant had full opportunity to confront the witness who testified at the suppression hearing and whose testimony was thereafter incorporated into the trial testimony. No doubt appellant's real complaint, which he vaguely suggests in his brief, is that his counsel was ineffective in failing to ask the suppression judge to refer the bench trial to another judge. However, we cannot find ineffectiveness on this basis alone. As the trial judge notes in his opinion, "there is nothing in the record of this case that was 'of a sufficient inflammatory nature to arouse a prejudice against the defendant' [*Commonwealth v. Goodman,* 454 Pa. 358, 311 A.2d 652 (1973)] that could have influenced the Court's actions." Lower Court Opinion at 6. We agree; therefore, assuming that the court would have denied the motion for recusation, we would not have found error. Appellant refers to "inadmissible testimony," but we cannot see that any of this testimony produced the verdict of guilty. Appellant was found guilty because he was proved to be in possession of seven pounds of marijuana.

—5—

 Appellant argues that counsel was ineffective in not asking for a different judge because the trial judge had previously presided over appellant's guilty plea on a drug possession charge. True it is that the prior conviction was inadmissible as proof of guilt on the present charge, but that

the judge probably remembered the plea and thus the prior conviction was in a sense in evidence. However, we find this claim without "arguable merit," *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977); once the suppression motion was denied the case against appellant was complete. We are satisfied that the trial judge found appellant guilty as charged on the basis of his possession of seven pounds of marijuana, not on the basis of his prior conviction.

Affirmed.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.